# Tropenas *v.* Bryson, Appellant.

*Patents—Patent for apparatus—Patent for process—License—Contract.*

On a bill in equity for an accounting, it appeared that by an agreement in writing plaintiff licensed the defendant to use a patented improved apparatus in the process of making steel, and also agreed to instruct him in and permit him to use certain secret improved methods of manufacturing steel in connection with the patented apparatus. The defendant agreed to pay certain royalties. It appeared that the defendant paid the royalties for a time, and then ceased to pay them without annulling the agreement. Defendant claimed that the plaintiff's patent infringed upon another patent, but the evidence showed that the patent referred to was one for an improved process in making steel while the plaintiff's patent was for an apparatus only, and it did not appear that anybody had raised any question of infringement. *Held,* that the plaintiff was entitled to a decree for an accounting.

Under the patent laws of the United States an improvement in a process and an improvement in a machine are entirely different things, but each in its own department may present subject-matter which is patentable.

Argued Feb. 27, 1906.    Appeal, No. 240, Jan. T., 1905, by defendant, from decree of C. P. Berks Co., Equity Docket, 1903, No. 852, on bill in equity in case of Alexandre Tropenas v. Andrew Bryson.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Bill in equity for an accounting.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree directing an accounting.

*Cyrus G. Derr*, with him *Charles W. Constantine*, for appellant.—The appellee represented to the appellant that he had a process, known as the Tropenas Converter Steel Process, which would make steel ; when in fact the process was in fundamental respects at variance with laws of nature, would not make steel and was a humbug.

The process so introduced into the appellant's plant by the appellee and taught the appellant by the appellee's engineer, was the process of another person, viz., Mr. Bookwalter, and the appellant was obliged to pay Bookwalter for the use of it.

The testimony submitted in this case leads to the conclusion, and it must be found as a fact, that the process for the manufacture of steel castings, which Mr. Tropenas, the plaintiff, through his engineer, taught the defendant's employees, and for the use of which the defendant, Mr. Bryson, paid royalties to the plaintiff, involves an air blast so applied to the mass of liquid metal in the converter as to cause it to rotate vertically and so as to bring a constantly changing surface of molten metal in contact with the blast, thus more rapidly consuming the silicon and other combustible matter in the iron and producing more intense heat whereby the metal is maintained in a liquid state, and that the said process is substantially that of Mr. Bookwalter, described in the specifications which form part of the above-mentioned letters patent issued upon the application of Mr. Robert.

The account of steel castings manufactured by the defendant which the plaintiff prays for in this bill is an account of castings manufactured by the defendant by a process which is not the process described in and covered by the plaintiff's letters patent and specification and which is not and was not the right or property of the plaintiff, but which was, during the period of the manufacture of the castings for which an accounting and payment are prayed for, the right and property of a person other than the plaintiff.

The execution of the agreement in question by the defendant was procured by the false and fraudulent acts and representations of the plaintiff, and is, therefore, void.

*Isaac Hiester*, for appellee.—Even if the patent in some of its features was invalid and if some of the methods, treatments and processes were useless, the remaining features furnished such a degree of utility and practical value as to produce substantially the required results and there was a sufficient consideration for the royalties which appellant undertook to pay: Hubbard v. Allen, 123 Pa. 198; Kroegher v. McConway & Torley Co., 149 Pa. 444; Palmer's App., 96 Pa. 106.

While there is an implied warranty of title by the licensor there is no warranty of the validity of the letters patent. All that the licensor warrants is that the licensee shall not be evicted from his enjoyment of his rights under the lease: Kins-

man v. Parkhurst, 59 U. S. 289; Angier v. Eaton, Cole & Burnham Co., 98 Pa. 594.

As long as the patent had not been adjudged invalid but was apparently valid and the appellant was enjoying the benefits of the supposed validity he continued liable for the stipulated royalty and is estopped from contesting the validity of the patent: White v. Lee, 14 Fed. Repr. 789; Jarecki v. Hays, 161 Pa. 613; Edison General Electric Co. v. Thackara Mfg. Co., 167 Pa. 530; Maitland v. Central Gas, etc., Co., 27 N. Y. Supp. 965; Skinner v. Wood Mowing, etc., Machine Co., 140 N. Y. 217 (35 N. E. Repr. 491).

OPINION BY MR. JUSTICE POTTER, April 16, 1906:

This bill was filed by the plaintiff to secure an accounting by the defendant under the terms of an agreement entered into between the parties, by which the plaintiff licensed the defendant to use an improved form of converter in the process of making steel, and agreed to furnish him with plans and drawings necessary for constructing and erecting a steel plant, and for equipping it with apparatus, machinery and furnaces for the operation of the converter, and to instruct him in the proper method of using it in the manufacture of cast steel. The agreement sets forth that plaintiff was the inventor of new and useful improvements in converters for the manufacture of steel, and that he was the owner of letters patent thereon granted to him by the United States of America, No. 511,919, and bearing date of January 2, 1894. Under the agreement, the defendant was to have the right to use this improved form of converter, and was also to have the benefit of advice and instruction from the plaintiff, and the use of certain special methods of treating pig iron which were to be made known to defendant by plaintiff, and certain formulas for special mixtures of sand were to be transferred, and plaintiff was also to impart to defendant certain special knowledge and information, gained by long experience, in manufacturing, as to the best ways and means of handling and tapping the converters, and pouring the molten steel into molds, and in annealing the castings, etc.; which methods were referred to as the Tropenas Converter Steel Process for the manufacture of steel castings. Some of these processes and treatments, it was stated, were secret, and

were the result of years of observation and experience by plaintiff, and were alleged to be of great practical importance, in the manufacture of steel, in connection with the improved form of converter, described in the letters patent. The defendant upon his part, agreed to make all proper use of the invention of the plaintiff, and to manufacture steel castings therewith, and to follow the methods and pursue the practice which was to be made known to him by the plaintiff. And, in consideration of the grant to him of the license so to do, he was to pay certain royalties, not less than the minimum amount stated in the agreement, and was to render stated accounts from time to time of the weights of the castings so manufactured by him. The bill charges that the defendant did erect a steel casting plant, and did thereafter install the improvements therein as agreed, and did continue the manufacture of castings in accordance with the method and the practice imparted to him by the plaintiff, and paid the royalties due thereon as stipulated, until February 2, 1902; but that since that time, though continuing to use the same apparatus for the manufacture of steel castings, he has refused to pay any royalties thereon or to render any account thereof.

The defendant admits these allegations of the bill, and acknowledges that he ceased paying royalties, and justifies himself in so doing by the assertion, that he was defrauded in the execution of the agreement; the basis for what he termed fraud being the conclusion which he had reached that the letters patent granted to the plaintiff were void, by reason of the fact that, in his judgment, the subject-matter of the specifications was either impracticable and absurd, or else it described means which were not new or patentable. In particular, he believed and alleged, that the method which he had been taught by plaintiff to use, in the manufacture of cast steel, and which he had followed, was an infringement of prior letters patent of the United States granted to one Bookwalter, as assignee of G. L. Robert, for processes of converting iron into steel.

The learned judge of the court below has carefully considered the issues of fact as between the parties, and has weighed the testimony accurately, and has set forth with great particularity his findings of fact and conclusions of law. He has concluded, and has formally found that the plaintiff has furnished to the

defendant substantially that, which by the terms of the contract, he agreed to furnish, and that there is nothing to justify the defendant in his refusal to pay the royalties as established and stipulated, in the contract. Without going into details, it is sufficient to say that we think the findings of fact are amply supported by the evidence. We are also in entire accord with the conclusions reached by the trial judge, and which were formulated by him, as follows:

" *a.* Bryson received sufficient consideration for the royalties he contracted to pay, in the right to use a patent which was not invalid, because in any essential respect impracticable, or infringing on the Robert patents, and in the instructions imparted to him in various useful and valuable special improvements, methods and treatments in the practice of the patent.

" *b.* Even if the patent in some of its features was invalid and if some of the methods, treatments and processes are useless, the remaining features, ·methods, etc., furnished such a degree of utility and practical value as to produce substantially the required results, and there was a sufficient consideration for the royalties Bryson undertook to pay.

" *c.* The Tropenas patent for the top (or upper row of) tuyeres is not invalid because some time before the granting of it Bookwalter had conceived the idea and made sketches of the device of a second row of tuyeres and communicated the same to a friend.

" *d.* As long as the Tropenas patent remained apparently valid and Bryson remained in the enjoyment of the benefits of it as such, he continued liable to Tropenas under their contract for the royalties, stipulated therein, and could not resist payment thereof on the ground of the invalidity of said patent.

" *e.* Even if Bryson might have avoided the contract with Tropenas for invalidity of the latter's patent or for fraud on the part of Tropenas in inducing him to enter into said contract he cannot have relief now because he has not shown that, when he stopped paying royalties, he repudiated said contract or abandoned the protection of the license, but it appears on the contrary that he has not ceased the use of appliances covered by it and furnished to him under it.

" *f.* Tropenas, as plaintiff in the original bill, is entitled to a decree requiring Bryson to account to him for royalties upon

steel castings Bryson has or should have manufactured under his license from Feb. 28, 1902.

"*g.* Tropenas, as defendant in the cross bill, is entitled to a decree dismissing the same."

The fundamental error in the position of the appellant, and one which permeates the entire argument made in his behalf is the failure to observe the distinction between a patent for an apparatus and one for a process. The Tropenas patent, under which the defendant took a license, is not a patent for a process at all; it is a patent for an improved form of apparatus used in the process of making steel. It appears from an inspection of the letters patent that the improvements described and set forth are all in the converter, and all of the claims point out, that the invention lies in the form and fittings of the converter. No claim is made for any improvement in the process of making steel, except that which attends the method followed by those who use the improved converter. It is true that Tropenas agreed to impart to the defendant, along with the privilege of using his improved form of converter, a certain amount of instruction, and was to convey valuable information in the art or process of making steel, and in the method of handling the converter, and in the mixing of the materials used, and in operating the blast of air. But it was not pretended that these matters were included in, or formed any part of, the invention set forth in the letters patent. On the contrary, the contract expressly sets forth that this knowledge and skill which was to be placed at the disposal of the plaintiff Tropenas, was the result of the experience of years which the plaintiff had given to the business, and it indicates that the processes and treatments thus referred to, were in part trade secrets accumulated by the plaintiff, and not to be had, except through personal communication and instruction.

On the other hand, the Robert patents, upon which defendant relies to defeat the validity of the patent of the plaintiff, and to relieve him from the payment of royalties, under the contract, are all for improvements in the process of converting iron into steel; and the inventor expressly disclaims any intention of including as part of the invention set forth therein, any part of the apparatus used in the process.

It is true that the plaintiff in referring to his system of mak-

ing steel, in which the converter is used as an instrument in the process, speaks of the whole method, as the " Tropenas Converter Steel Process." But the art or process of making steel, or open hearth steel, was by no means new at that time as appears from the testimony. All that could be claimed in the state of the art as it existed when both Robert and Tropenas were applying for the grant of letters patent, was the particular and specific improvement, each claimed to have made, in what was then comparatively a well known line of manufacture, the making of steel. Neither of the parties concerned could properly assert any broad claims to invention, but each had invented something, which was considered as having patentable merit. The one was in the line of improving the process itself, the other was in the line of improving the machine or apparatus to be used in carrying out the process of making steel.

Under the patent laws of the United States, an improvement in a process, and an improvement in a machine are entirely different things, but each in its own department may present subject-matter which is patentable. Yet through most of the argument for appellant, this distinction is overlooked, and Tropenas's patent, which covers only the apparatus, is treated as though it were intended to cover the process. It is perhaps unnecessary to compare minutely the results produced by the use of the Tropenas converter in the manufacture of steel, with those which attend the use of the process set forth in the Robert patents ; for the reason that, as we have stated, the Tropenas patent is limited in its claims to the mechanical devices set forth and described therein ; while the claims of the Robert patents refer to the particular methods therein described of applying an air blast to the molten metal during the process of converting iron into steel. " The respective results of a machine or manufacture covered by the claim of a patent, and of a machine or manufacture alleged to infringe that claim, do not furnish a criterion by which to decide the question of infringement. Those results may be identical, while the things which produce them are substantially different. Any person may accomplish the result performed by a patented thing without infringing the patent, if he uses means substantially different from those of the patent. To hold the contrary of this rule would be to retard, and not to promote, the progress of

the useful arts : " Walker on Patents, sec. 340, citing Westinghouse v. Boyden Power-Brake Co., 170 U. S. 507, and other cases. Yet in his effort to escape from the obligations of his contract, the defendant has compared results from the use of an apparatus, and the results of a process in the broadest way. He has reasoned thus : " I have been making steel with the Tropenas converter and as directed by him, and the process has consumed only half an hour. I am advised that steel cannot be made in half an hour without imparting a gyratory motion to the metal ; and as the object of the process described in the Robert patents is to produce a gyratory motion, and its claims include means for that end, I must have infringed upon the Robert patents." But in this he overlooked the fact that results as such, are not patentable ; it is only means for producing results that are thus protected, and even if Tropenas and Robert produced the same result, if they did it by different means, there would be no clash. Each used a converter, and an air blast, both of these devices being old. But Robert sent his air blast into the molten metal with the avowed purpose of creating a great deal of agitation and commotion, while Tropenas constructed his converter and arranged his tuyeres, and controlled the blast in such a way as to reduce the gyratory motion to a minimum. Such agitation was desired in the one case, and was avoided and diminished as much as possible in the other.

Neither Robert nor Tropenas claims the invention of a tilting converter, as that device was well known before. In fact, the real inventions of both parties, seem to be confined within very narrow limits. The evidence in this case does not show us the state of the art, at the time of the Robert applications, and without information as to that, we cannot judge properly as to the scope of his claims ; but it is very probable that when properly construed with reference to the actual state of the art, they will not be found to have been infringed by the system pursued by the defendant.

A great deal of scientific knowlege and technical learning is displayed by counsel for appellant, in knocking down claims, which we do not find are made at all on behalf of the plaintiff, in the specifications for the invention described in the Tropenas patent. From the fact that the patents of Robert and

that of Tropenas were each allowed to issue by the expert examiners of the patent office, we may presume that in their judgment at least no real antagonism exists between the inventions set forth and described in the two grants. And when we note the further fact that, as we have seen, the one is for an improved process or method of making steel, without reference to any particular apparatus, and the other is for an improved form of converter, a mere mechanical appliance, which is part of the apparatus to be used in any appropriate process or method of making steel, the suggestion that the claims of the patents necessarily interfere, loses all its force.

It may be, that in the practical operation of making steel, as it was performed by him, the defendant came within some of the claims of the Robert patents. But if so, there was no sufficient proof of it, nor was there any evidence to show the validity of the Robert patents, or to show what the scope of their claims really was as properly limited by the prior state of the art. Of course we are not called upon to construe the patents except in so far as may be necessary to ascertain the rights of the parties under the agreement, and to determine what was in fact the subject-matter thereof. We have no jurisdiction to determine the validity of the patents. We are only concerned with the contract between the parties, and we have only to inquire whether or not the defendant got from the plaintiff substantially that for which he had stipulated, and for which he agreed to pay a fixed and minimum amount of royalty.

After a most searching analysis of the testimony the learned court below has found as a matter of fact that he did, and our own examination of the record, has satisfied us that he was entirely correct in so finding.

Just why defendant should have become so deeply imbued with the idea that the method he was using was an infringement upon the Robert patents, does not appear from the testimony. Apparently he reached that conclusion of his own volition. No threat of prosecution was shown, and no adjudication of any court appears, sustaining the validity of any of the claims of the Robert patents. The defendant certainly had no right to repudiate his contract with the plaintiff, under the theory that possibly he might be held legally liable to another party, for the use of a process, in which he made use of the plaintiff's im-

proved converter, and carried on the operation of making steel in accordance with the instructions and suggestions of the plaintiff, and employed his method of mixing ingredients, pouring hot metal, and annealing the castings. It would be time enough for him to complain in this respect, when he was actually hurt. As the case now stands there is no evidence that there was any interference with him while he was practicing the art of making steel as he had learned it from the plaintiff, or that there was any imminent danger that any such attempt if made, would be successful.

We are not convinced that the defendant was deprived of anything for which he could properly be deemed to have bargained ; or that he failed to get anything for which he stipulated in the contract which he made. He bargained for the use of an apparatus and that apparatus was supplied to him. He was also to be advised and instructed in the use of the apparatus, and in the art of making steel. In that respect also, the agreement was fulfilled.

These considerations were sufficient to support the contract. It may be that in the use of the process something covered by the claims of the Robert patents was used, although so far as the evidence shows, this is very doubtful indeed. But whether there was any such interference or not, the defendant was bound under his contract to pay for that which he did obtain from the plaintiff, and which he used in the business.

The assignments of error are all overruled, and the decree of the court below is affirmed, and this appeal is dismissed at the cost of the appellant.